**BLANK ROME LLP**
Michael B. Schaedle
Rick Antonoff
Gregory F. Vizza (*pro hac vice* admission pending)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

*Attorneys for Richter Advisory Group Inc.*
*In Its Capacity as Proposal Trustee and Foreign Representative for the Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                                                 :
In re:                                                           :    Chapter 15
                                                                 :
**SHERSON GROUP, INC.**                                          :    Case No. 15-_____ ( )
                                                                 :
                                                                 :
        Debtor in a Foreign Proceeding.                          :
                                                                 :
---------------------------------------------------------------- X

### *EX PARTE* MOTION OF FOREIGN REPRESENTATIVE FOR PROVISIONAL RELIEF IN THE FORM OF AN ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING ORDER AND, AFTER NOTICE AND A HEARING, A PRELIMINARY INJUNCTION

Richter Advisory Group Inc, is the proposal trustee ("Trustee" or "Foreign Representative") and foreign representative of Sherson Group, Inc. ("Debtor") in a Matter of Intention to Make a Proposal (the "Canadian Matter") under Canada's *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended (the "BIA") filed a *Notice of Intention to Make a Proposal* with the Office of the Superintendent of Bankruptcy Canada ("Superintendent") on June 29, 2015.

The Trustee, as the Debtor's Foreign Representative, has commenced this chapter 15 case ancillary to the Canadian Matter by filing an *Official Form Petition* and the *Verified Petition Under*

*Chapter 15 For Recognition of a Foreign Main Proceeding* (together with all exhibits appended thereto, the "Verified Petition")[1] on behalf of the Debtor. By its undersigned counsel, the Trustee hereby moves this Court (the "Motion"), pursuant to Rule 65 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to this proceeding through Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for injunctive relief pursuant to section 105(a), 1507, 1519 and 1521 of title 11 of chapter 11 of the United States Code (the "Bankruptcy Code"), as set forth below. In support of this Motion, the Trustee, as Foreign Representative and chapter 15 petitioner, respectfully states as follows:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (Ward, Acting Chief Justice), dated July 10, 1984. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P). Venue in this district is proper pursuant to 28 U.S.C. §§ 1410.

2.  The statutory predicates for the relief requested herein are sections 105(a), 1507, 1519, and 1521 of the Bankruptcy Code, Rule 7065 of the Bankruptcy Rules and Rule 65 of the Federal Rules.

## RELIEF REQUESTED

3.  By this Motion, the Trustee seeks entry of two orders necessary to preserve the Debtor's business and property pending consideration of its proposal in the Canadian Matter:

    a.  on an *ex parte* basis, an order to show cause with temporary restraining order (the "First Provisional Order") in the form annexed hereto as Exhibit A, which (a) stays all proceedings against the Debtor, their current, former and future and the Trustee,

---

[1] Any capitalized term not otherwise defined in this Motion will have the meaning ascribed to such term in the Verified Petition filed concurrently with this Motion.

2

and (b) prevents the Debtor's licensors and product sourcing counter-parties from terminating, altering, or suspending service to the Debtor and from terminating, altering, or suspending performance under that certain Amended and Restated Distribution and License Agreement dated January 1, 2004 (as amended, restated, or otherwise modified, the "License Agreement") by and among the Debtor as "Distributor" and otherwise, and Jones Investment Co. ("JICO"), Nine West Development Corporation ("NWD"), JAG Footwear Accessories and Retail Corporation ("JAG") as "Licensor" and product sourcing counterparties (collectively, JICO, NWD, and JAG are referred to collectively as "Licensors"), all to the extent stayed in Canada under the BIA since the Debtor filed its Notice of Intention ("Notice of Intention") to Make a Proposal with the Office of the Superintendent of Bankruptcy on June 29, 2015 ("Canadian Commencement Date"); and

b. after notice and a hearing, to the extent any objection to this Motion is made by the deadline set by this Court, a preliminary injunction in the form annexed hereto as Exhibit B ("Second Provisional Order") extending the injunctive relief granted in the TRO (the "Injunctive Relief") (if no objection is made, then the First Provisional Order shall remain in effect until the Court has decided whether to recognize the Canadian Matter pursuant to the Verified Petition).

## BACKGROUND

4.  As set forth more fully in the Verified Petition and the *Declaration of Foreign Representative as Required by 11 U.S.C. § 1515 and in Support of the Ex Parte Application for Provisional Relief Pending Recognition of a Foreign Main Proceeding* (the "Trustee Declaration"), the Debtor is one of Canada's premier distributors and retailers of footwear and accessories. The Debtor's fashion portfolio features names such as *Nine West, Bandolino, Enzo Angiolini, Anne Klein, Easy Spirit, Adrienne Vittadini, Adrianna Papell, Taryn Rose, Flogg, Charles David, Circa Joan and David,* and *Mootsies Tootsies*. Trustee Declaration, ¶ 7. The Debtor's primary brand is *Nine West Shoes* and distribution occurs primarily through the Debtor's 48 retail locations in Canada (although a substantial percentage of sales occur through wholesale and E-commerce channels). The Company employs in excess of 600 workers throughout Canada. *Id.* at ¶ 8.

5.   The Debtor has a $13 million[2] revolving loan facility (the "BOM Revolver") with Bank of Montreal ("BOM"), which is secured by a first-ranking security interest in the Debtor's property, including, without limitation, accounts and inventory, and is evidenced by a certain Credit Agreement, dated January 18, 2013.  Trustee Declaration, ¶ 9.  As of the Canadian Commencement Date, the Debtor was obligated to BOM in respect of the BOM Revolver in the approximate amount of $4.8 million however, there is currently limited additional availability based on the applicable borrowing base and reserves.  *Id.*  The Company also has a secured term loan with Bank of Montreal with remaining indebtedness owed in the approximate amount of 780,000.  *Id.*

6.   The Debtor is also obligated on a $3 million term loan facility (the "BDC Term Loan") from BDC Capital, Inc. ("BDC"), which is secured by a general security interest in the Debtor's property subordinate by its terms to the BOM Revolver, and is evidenced by a certain Letter of Offer, dated January 11, 2013.  *Id.* at 10.  As of the Canadian Commencement Date, the Debtor was obligated to BDC in respect of the BDC Term Loan in the approximate amount of $3 million.  *Id.*

7.   The Debtor is likewise obligated to its general creditors, including trade creditors and distributors (including, without limitation, the Licensors in respect of the License Agreement), in excess of $25 million, and is obligated to certain insiders on certain terms in the amount of $4.5 million.  *Id.* at 11.

8.   The Company has faced certain challenges associated with market conditions (both as to its core products and currency volatility) and the unsuccessful implementation of a growth strategy developed with the Licensors in connection with the License Agreement.  *Id.* at 12.  This

---

[2] All references are to Canadian dollars.

4

has led to a liquidity crisis and resulting covenant defaults in connection with the BOM Revolver and defaults under the License Agreement. Trustee Declaration, ¶ 13. The Company, in conjunction with its consultants, will be developing a comprehensive restructuring proposal ("Proposal") to address underperforming stores, right size the Company's overhead, clear excess inventory positions and address the payable to the Licensors, liquidity constraints and senior and second lien lender defaults. *Id.*

9. The Proposal, which will require concessions and cooperation from the Company's creditors, will enable a restructuring that will value maximize for all Company creditors, including the Licensors. *Id.* at 14

10. By filing its Notice of Intention to make its proposal, the Debtor has obtained a stay of actions against itself, its assets, the Trustee, and its directors in Canada, including in respect of the important License Agreement. *Declaration of Sam Babe* ("Babe Declaration") *of Aird & Berlis LLP in Support of Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding*, ¶ 16. Further, the Canadian Court has entered an order ("Authorizing Order") specifically authorizing the Trustee to act as the Debtor's Foreign Representative in order to file this chapter 15 case. Babe Declaration, ¶ 12.

11. Consistent with the Authorizing Order, the Trustee has filed this chapter 15 in order to protect the integrity of the License Agreement, which is an agreement governed by New York law, obligating the Licensors, entities, which are located in both New York and in Delaware. Trustee Declaration, ¶¶ 12-13, 17-18. While the Debtor generally does business with the Licensors in Canada and expects that the Licensors will participate in the Canadian Matter, honoring the stay in Canada as to the License Agreement, given that the Licensors are located in the United States and given that the License Agreement is governed by New York law, if unstayed, each of the

Trustee and the Debtor is particularly concerned that Licensors could attempt to gain an unfair advantage over other creditors by threatening to shut off service or to terminate the License Agreement with the Debtor under U.S. law. Given the immediate and irreparable harm that would be caused if the License Agreement were terminated or suspended, the Debtor requires the Injunctive Relief, on an emergency basis. *See, e.g., RSM Richter Inc. v. Aguilar (IN re MusscleTech Research and Dev. Inc.)*, No. 06-01147, Dkt. No. 6 (Bankr. S.D.N.Y. 2006) (*ex parte* order to show cause with temporary restraining order enjoining commencement or continuation of actions against foreign debtors and non-debtor third parties pending hearing to consider entry of preliminary injunction).

12.    As noted, the stay in Canada restrains any action by the Licensors to terminate the License Agreement. Babe Declaration, ¶ 16.

## ARGUMENT

13.    The requested relief is authorized by sections 105(a), 1519 and 1521 of the Bankruptcy Code. Section 1519 provides, in pertinent part:

> From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including
>
> (1) staying execution against the debtor's assets;
>
> ...
>
> (3) any relief referred to in paragraphs (3), (4) or (7) of section 1521(a).

11 U.S.C. § 1519(a). Section 1521(a)(7) provides that the Court may grant "any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550 and 724(a)." 11 U.S.C. § 1521(a)(7); *see, e.g., In re Grant Forest Prods.*, 440 B.R. 616

6

(Bankr. D. Del. 2010) (broad power to grant "appropriate relief" vested in bankruptcy court under 11 U.S.C. §§ 1519, 1520 and 1521 relating to foreign proceedings authorized bankruptcy court to approve of certain orders by Canadian bankruptcy court because rights of creditors and other interested entities were sufficiently protected); *In re AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013) (finding that foreign representative could, via section 1521(a)(7), employ the turnover provisions of section 542 and 543 to obtain books and records).

I. **The Court Should Grant the Debtors *Ex Parte* Provisional Relief akin to a Temporary Restraining Order Pending a Preliminary Injunction Hearing, or Absent Objection, Pending Recognition**

14.     The United States Supreme Court has held that *ex parte* restraining orders may be issued to preserve "the *status quo* only for so long as is necessary to hold a hearing." *Granny Goose Foods. Inc. v. Brotherhood of Teamsters and Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Rule 65(b) of the Federal Rules, made applicable to these cases by Bankruptcy Rule 7065, requires that to obtain an *ex parte* temporary restraining order, the applicant must show that "immediate and irreparable injury, loss or damage would result to the applicant before the adverse party or that party's attorney can be heard in opposition." *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979); *see also In re Prudential Lines. Inc.*, 107 B.R. 832, 835 n.4 (Bankr. S.D.N.Y. 1989) (granting temporary restraining order where the moving party established a "summary showing of its necessity in order to prevent immediate and irreparable injury"); *TKR Cable Co, v. Cable City Corp.*, 267 F,3d 196, 198 (3d Cir. 2001) (granting *ex parte* temporary restraining order against defendant to enjoin further sale of cable television descramblers).[3]

---

[3] Courts have not, it should be noted, required full or literal compliance with Rule 65(b) requirements, in respect of provisional relief under Bankruptcy Code section 1519. For example, provisional relief can be ordered on an *ex parte* basis at case commencement through and pending recognition without the need for a preliminary injunction hearing or the filing of an adversary. *See In re Daehan Shipbuilding Co., Ltd.*, Case No. 14-12391 (MG) (Dkt. Nos. 3 and 8) (Bankr. S.D.N.Y. Aug. 21, 2014) (provisional relief ordered in a single step within three days of chapter 15 commencement through recognition); *In re Electro Sonic Inc.*, Case No. 14-10240 (LSS) (Dkt. No. 18) (Bankr. D. Del. Feb. 11, 2014) (*ex parte* provisional relief ordered to stay actions against U.S. assets of Canadian debtor making

7

15. The issuance of an *ex parte* temporary restraining order is appropriate in this case as the Debtor is in need of immediate relief. As set forth in the Verified Petition and the Trustee Declaration, the Debtor commenced this case to preserve its primary business, its *Nine West* driven retail shoe channel, while it attempts to effect a proposal with its stakeholders in the Canadian Matter. It is axiomatic that the Debtor can only do so if it can continue to sell *Nine West* product pursuant to the License Agreement. Otherwise, the Company will suffer a dramatically deeper liquidity crisis and will likely be forced into a piece-meal liquidation.

16. The Debtor and its employees and stakeholders in Canada are substantially dependent on the Licensors and the License Agreement. In light of the Licensors' market power in connection with the Debtor, there is a real risk that unless the First Provisional Order is issued, the Licensors would leverage the threat of License Agreement termination under U.S. law in its consideration of the proposal and in respect of the Canadian Matter.

17. Similarly, in the absence of the entry of the First Provisional Order by this Court, there is also a material risk that a party in interest could use a U.S. forum to commence an action against the Debtor or its business or property, or the Debtor's former, current, or future directors, or the Trustee. Such an action would interfere with and cause harm to the Company's efforts to reorganize in the Canadian Matter and distract Company management. It could also increase the claims against the Debtor in the Canadian Matter in respect of defense costs and would undermine the Debtor's efforts to achieve an equitable distribution for the benefit of their creditors.

---

proposal under the BIA from chapter 15 case commencement through recognition); *see also In re Pro-Fit Holdings, Ltd.*, 391 B.R. 850, 860-65 (Bankr. C.D. Cal. 2008) (applying Bankruptcy Code section 362 provisionally, pending recognition, and noting that because section 362 relief was being sought, no adversary was required and the rules applicable to the ordinary issuance of an injunction were inapplicable).

15-11765-shl    Doc 5    Filed 07/06/15    Entered 07/06/15 11:08:19    Main Document
Pg 9 of 15


18. In light of these risks, the BIA imposed a broad stay protective of the Debtor, its assets (including the License Agreement), and management and directors as of the Canadian Commencement Date. Babe Declaration, ¶ 16. The requested relief is, therefore, in aid of the requirements of the BIA, the Canadian Court, and the Canadian Matter.

## II.     **The Preliminary Injunction Is Warranted and Appropriate In These Cases**

19. In addition, granting immediate provisional relief is appropriate where, as is the case here, the Debtor has demonstrated the ability to satisfy the requirements for a preliminary injunction. In this Circuit, courts have held that "where there is a showing that the action sought to be enjoined would burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects, the Bankruptcy Court may issue injunctive relief." *Rosetta Res. Operating LP v. Pogo Producing Co. (In re Calpine Corp.)*, No. 05-60200, 2007 WL 1302604, at *3 (Bankr. S.D.N.Y, Apr. 30, 2007) (*citing In re Alert Holdings. Inc.*, 148 B.R. 194 (Bankr. S.D.N.Y. 1992)). Otherwise, in considering a preliminary injunction in the bankruptcy context, courts in this Circuit have traditionally evaluated four factors: (a) whether there is a likelihood of successful reorganization; (b) whether there is an imminent irreparable harm to the estate in the absent of an injunction; (c) whether the balance of harms tips in favor of the moving party; and (d) whether the public interest weighs in favor of an injunction. *See Nevada Power Co. v. Calpine Corp., (In re Calpine Corp.)*, 365 B.R. 401, 409 (S.D.N.Y. 2007) (citation omitted). Here, the Debtor's requested Injunctive Relief satisfies both standards.

20. The Debtor is attempting to reorganize under the supervision of the Canadian Court through the expedited BIA proposal process. On this basis, there is a manifest likelihood that a successful reorganization of the Debtor can be achieved.

21. Relatedly, the Canadian Matter is likely to be recognized as a foreign main proceeding and the Trustee is, per the Authorizing Order, a foreign representative. See 11 U.S.C. §§101, 1517 and 1520. Of course, this Court and bankruptcy courts across the United States have recognized Canadian insolvency proceedings, including proposal matters under the BIA. See, e.g., *In re Canwest Global Communications Corp.*, Case No. 09-15994 (SMB) (Dkt. No. 34) (Bankr. S.D.N.Y., Nov. 3, 2009); see also *In re Electro Sonic Inc.*, Case No. 14-10240 (LSS) (Dkt. No. 39) (Bankr. D. Del., Mar. 20, 2014); *In re Jay Tien Chiang*, 437 B.R. 397 (Bankr. C.D. Cal. 2010).

22. The Canadian Matter is a foreign proceeding as it is a collective judicial proceeding in Canada, a foreign country, under the BIA, an insolvency law. In the Canadian Matter, the Debtor's assets will be subject to oversight by the Canadian Court for the purpose of reorganizing the Company, an entity in distress, and adjusting claims. See Babe Declaration, ¶ 18-19; 11 U.S.C. §101(23). Further, the Canadian Matter is a main proceeding. Canada is the center of the Debtor's main interests; it is the location of the Company's registered office and its primary locus of business operation (all of its retail stores and all of its employees are located in Canada for example). Trustee Declaration, ¶¶ 8, 16; 11 U.S.C. §1517(b)(1); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122,130 (Bankr. S.D.N.Y. 2007) *aff'd*, 389 B.R. 325 (Bankr. S.D.N.Y. 2008) (rebuttable presumption that the location of the foreign debtor's registered office is "COMI"); see also *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 130 (2d Cir. 2013) (explaining that courts look to factors such as the location of the debtor's headquarters, the location of those who actually manage the debtor, and the location of the debtor's primary assets, among other things, to determine "COMI"). Finally, the Trustee (as a corporation) is a "person" under Bankruptcy Code section 101(41), which qualifies it to be a Foreign Representative under Bankruptcy Code section 101(24). Pursuant to

the Authorizing Order, the Trustee is authorized to act as the foreign representative in this chapter 15 case. Babe Declaration, ¶ 12.

23. As described above, the Injunctive Relief the Debtor seeks is tailored and acutely necessary to prevent irreparable harm to the Debtor, its business and the prospects of its proposal. Without the requested relief, the Debtor's business could suffer draconian interruption. Moreover, such a stay is necessary to prevent stakeholders in the United States from gaining an unfair advantage over other stakeholders and creditors in Canada and to avoid disruption of the reorganization process, which has just begun in the Canadian Matter. *See In re MMG LLC,* 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("As a rule . . . irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors.") (internal citations omitted). Even the threat of the commencement or continuation of proceedings in the United States by the Licensors or other parties, or the termination of the License Agreement by the Licensors would serve to distract the Debtor and its management and the Trustee; thereby, impeding the Debtor's efforts to effectuate its proposal.

24. At the same time, the Trustee submits that no harm will result to any party that is greater than the harm to the Debtor in Canada in the absence of the requested Injunctive Relief. The Company generally does business in Canada, so there should be no element of unfairness or surprise that creditors and other stakeholders would be subject to the Canadian Court's jurisdiction. In addition, with respect to the First Provisional Order, the relief requested is only temporary, extending a few days until a hearing on the preliminary injunction request if an objection is filed or a few weeks until the recognition hearing, at which time anyone who objects will have an opportunity to be heard. Accordingly, the limited harm to any enjoined party is outweighed by the

potential of severe harm to the Debtor and its creditors and other stakeholders. Notably, the Debtors have agreed to pay the Licensors on a current basis for goods and royalties post-filing of the Notice of Intention.

25. Finally, granting the relief requested is in the public interest. The Injunctive Relief will aid the Canadian Matter and is consistent with the Authorizing Order issued by the Canadian Court and the stay provisions of the BIA, which are currently in effect as to the Debtor, its assets, the Trustee and its directors. As such, the requested relief is entirely consistent with the purpose of chapter 15, namely:

> [T]o incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of-
>
> (1) cooperation between -
>
>   (a) Courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>
>   (b) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> (2) greater legal certainty for trade and investment;
>
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities including the debtor;
>
> (4) protection and maximization of the value of the debtor's assets; and
>
> (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

## HEARING DATES AND NOTICE

26. The Trustee, as petitioner and Foreign Representative, respectfully requests that this Court, by means of the proposed First Provisional Order attached hereto as <u>Exhibit A,</u> (i) grant

immediate injunctive relief to the Debtor, (ii) schedule an objection deadline ("Objection Deadline") as to preliminary injunctive relief and the Second Provisional Order (Exhibit B hereto); and (iii) if an objection is filed by the Objection Deadline, schedule a hearing on the preliminary injunction and the Second Provisional Order in accordance with Rule 65 of the Federal Rules (such date, the "Hearing Date"). If no objection is filed by the Objection Deadline, the hearing in respect of the Hearing Date will be cancelled and the First Provisional Order will remain in effect until the Court determines whether or not to recognize the Canadian Matter (hearing on recognition in this context will be scheduled by the Court at its earliest convenience after the Objection Deadline and the cancellation of the Hearing Date). The Trustee proposes that once a Hearing Date has been set by the Court, notice will be given by overnight delivery service or, if known, by email in pdf, upon (a) all parties against whom provisional relief is being sought pursuant to this Motion, (b) all parties to litigation pending in the United States in which a Debtor is a party at the time of filing of the chapter 15 petitions, (c) each of the Licensors, BOM, and BDC, and (d) the United States Trustee (collectively, the "Chapter 15 Notice Parties"). The Trustee believes such notice and service constitutes reasonable and proper notice under the circumstances, and that no further or other notice is necessary or appropriate.

## NO PRIOR REQUEST

27. No previous request for the relief requested herein has been made to this or any other court. Given the exigent and limited *status quo* nature of the relief requested, it is respectfully requested that this Court waive and dispense with the requirement set forth in Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that any motion filed shall be accompanied by a memorandum of law on the grounds that the relevant authorities and legal authorities in support of the Verified Petition are contained herein.

Notwithstanding the foregoing request, Trustee reserves the right to file an appropriate memorandum of law should it become necessary under the circumstances.

[*Remainder of page intentionally left blank*]

WHEREFORE, for the reasons set forth herein, the Monitor respectfully requests the Court (i) enter the proposed First Provisional Order attached hereto as Exhibit A. (ii) after notice and a hearing, if an objection is filed by the Objection Deadline, enter the proposed preliminary injunction and Second Provisional Order attached hereto as Exhibit B and (iii) grant such other and further relief as this Court determines is fair and equitable under the circumstances.

Dated: July 6, 2015
New York, New York

By: /s/ Michael B. Schaedle

**BLANK ROME LLP**
Michael B. Schaedle
Rick Antonoff
Gregory F. Vizza  (admission *pro hac vice* pending)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-0208
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
schaedle@blankrome.com
rantonoff@blankrome.com
vizza@blankrome.com

*Attorneys for Richter Advisory Group Inc. In Its Capacity as Proposal Trustee and Foreign Representative for the Debtor*